## MORRIS vs. WOODWARD and others.

1. A refusal to adjourn a sale, in the exercise by the sheriff of a reasonable discretion, is not sufficient ground for setting the sale aside.

2. A requirement that twenty per cent. of the purchase money shall be paid at the close of the sale, and satisfactory security be given for the balance, will not suffice to set aside the sale, where no complaint was made of the terms, nor any relaxation of them requested, and where it does not appear that any one was prevented from bidding by reason of them.

3. Where an agreement is made by the complainant with a mortgagee defendant, present at the sale and intending to buy in the property to protect his claim if necessary, that if such mortgagee would not bid, and would permit him to buy the property, he would pay his claim, and by reason of the latter not bidding in pursuance of such agreement, the property

brought much less than it otherwise would have done, thereby throwing upon the mortgagor, against whom the complainant had taken a personal decree for deficiency, a liability for a greater deficiency, such agreement is a fraud upon the mortgagor, which vitiates the sale.

On motion, on petition and affidavits, and rule to show cause, to set aside a sheriff's sale of mortgaged premises.

*Mr. S. M. Schanck,* for the motion.

*Mr. James Wilson,* contra.

THE CHANCELLOR.

The defendant, Charles H. Woodward, owner of the equity of redemption in the mortgaged premises, moves to set aside a sale of those premises, (a mill property of the value of about $10,000,) made by the sheriff of Monmouth. The motion is based on the allegation that the sale was conducted illegally, because the sheriff refused to adjourn it at the request of Woodward, and imposed severe and forbidding terms of sale, and on the further ground that the complainant, who was the holder of the second and fourth mortgages, and who purchased the property at the sale for $5000, prevented competition by an agreement with the holder of the third mortgage, who was there to protect his claim by bidding on, and even buying in the property if necessary. The case was one in which the sheriff ought to have granted the adjournment, if there had been no special reason to the contrary. The property was valuable; the adjournment was asked for on the day fixed for sale in the notice, and there had, therefore, been no adjournment; the petitioner had been engaged for some days previous to that time as a juror, and so, by his enforced attention to public business, had been prevented from looking after his interest in this matter as he otherwise would have done. He had expectations, apparently well founded, of raising the money necessary to pay off the execution, if a few days were given to him for the purpose. The sheriff, however, refused, and his refusal would have

been unreasonable but for the fact that the petitioner had committed waste on the premises to such an extent as to render it necessary for the complainant to apply to the court to restrain him. The sheriff had refrained from advertising the property, for some weeks after the execution came to his hands, to afford the petitioner an opportunity to arrange the matter and so prevent a sale. The complainant protested against an adjournment. Under these circumstances I am not willing to question this exercise of discretion. The terms of sale were unusually severe, although the sheriff says they were and had been his ordinary conditions so long as he had been in office, and he had then been in office over two years. They required the payment of twenty per cent. of the purchase money at the close of the sale, and satisfactory security for the balance. The latter condition seems to me to be unnecessarily hard, and it must in many cases tend to prejudice the sale. But no complaint was made of the terms at the sale, nor was any relaxation of them requested, nor does it appear that any one was prevented from bidding by reason of them. The property was put up for sale twice on the same day. The first time it was struck off to John H. Silvers, a brother-in-law of the petitioner, at $9000. He failed to comply with the terms. He appears to have been unable to pay the twenty per cent., and the property was again set up, and it was then sold to the complainant for $5000. The holder of the third mortgage bid, at the first sale, $7500. It was necessary that the property bring about $7000, to cover his claim. Between the two sales the complainant approached him and requested him not to bid on the property, and offered to pay his claim if he would not bid. To this he acceded, and when the property was put up the second time, he, in view of the bargain made between him and the complainant, did not bid, and the consequence was that the latter bought the property at his single bid of $5000. That agreement was contrary to the policy of the law. *Fuller* v. *Abrahams,* 3 *Brod. & Bing.* 116.; *Martin* v. *Ranlett,*

5 *Rich.* (*Law*) 542; *Mills* v. *Rogers*, 2 *Littell* (*Ky.*) 217; *Smith* v. *Greenlee*, 2 *Dev.* 126.

In judicial sales at auction, no practice which will tend to prejudice the sale should be permitted, least of all should he for whose benefit the property is sold, be allowed to reap the advantage of such practice on his part. In the present case the complainant took a personal decree against the petitioner for deficiency. This is an additional reason for setting aside the sale, which his agreement to prevent competition has deadened, at least to such an extent as to make the deficiency, to the payment of which the petitioner is subjected, greater than it otherwise would have been. Besides, it appears that the complainant, on paying the claim of the third mortgagee, took an assignment of it, which he now holds. The agreement was a fraud upon the petitioner.

The sale will be set aside.